DüNKIN, Ch.
dissenting. A majority of this Court are of opinion (and I concur with them) that the words “ die without living issue of her body ” are equivalent to “ die without leaving issue of her body alive at her decease.” Judicially read, it is a bequest to the testator’s daughter, Susan Cynthia Brown, and the heirs of her body, but “ if my said daughter should happen to die-without leaving issue of her body alive at the time of her decease, then and in that case” over. Certainly, since Henry & Talbird vs. Archer, (Bail. Eq. 535,) I think it has not been questioned that the effect of these subsequent words is to restrict the generality of the previous expression, and to create a life estate in the first taker, and enable the children to take as purchasers. The bequest in Henry & Talbird vs. Archer, was to the testator’s daughter, “ to her and the lawful issue of her body forever,” but if any of his daughters should die “ without leaving lawful issue of their body alive,” then their part to be equally divided among the surviving children.
*387 The daughter died leaving children, and they were held entitled to take as purchasers ; and upon the principle, that “ where there is an express gift to issue generally, a limitation over, in the event of the first taker’s dying without leaving issue living at his death, will confine the gift to such issue as are living at that time, and entitle them to take as purchasers.” Where the bequest is to one and his issue, or the heirs of his body, without more, the law gives an absolute estate, not because the testator intended to give an absolute estate, but because he intended to give an estate restricted indefinitely in lineal succession which the law does not permit. Eut if there are superadded words which manifest that the testator did not contemplate such indefinite lineal succession, the Court lays hold of such words in order to give effect to the intention.— The circumstance of limiting the property over, on the event of not leaving issue has been held, in a large class of cases, sufficient to show the testator’s intention to use the word issue, or heirs of the body, not as a word of limitation, but of purchase. The authority of Henry & Talbird vs. Archer has been repeatedly recognized, and may now well be regarded as a rule of property, nor is the obligation of that decision now called in question. In the will before us, the intention of the testator to restrict the meaning of the term issue to the children, or other descendants of his daughter living at her death, is manifested by language nearly identical with that of Bell’s will. The daughter left children, who are parties to these proceedings, and who, according to Henry & Talbird vs. Archer, are entitled to take as purchasers, under the will of their grandfather.
But it is objected that the children are not entitled, because, if their mother had happened to leave no children, the terms of the ulterior limitation over leave it uncertain to whom, in that event, the estate would pass. In other words the testator has clearly manifested the objects of his bounty if his daughter left children alive, and she has left children, but he has not been so fortunate in designating the objects of his bounty in a contingency which has not happened; but this want of certainty is to defeat his de- *388 dared purpose in the event which has happened. Let the proposition be analyzed with reference to this case. The gift is to the testator’s daughter and the heirs of her body, which, by the restrictive words subsequently used, would be construed to give a life estate to the mother with a remainder to her issue living at the time of her death. But the testator further provided that if his daughter “ should happen to die without living issue of her body, then and in that case the estate is to return to the nearest heirs of testator’s body by his mother’s lineage.” It is said that this contingent limitation over is void for uncertainty, as the Court would be unable to say who were the nearest heirs of testator’s body by his mother’s lineage; and in what remains to be said that will be assumed. But what is the consequence deduced from it ? Does this uncertainty as to the ultimate and contingent object of the testator’s bounty, in an event which has never occurred, create the smallest uncertainty as to the objects of his bounty, in the event which has occurred ? Does it create a suspicion that he contemplated an indefinite lineal succession, and that he did not restrict his vision to the period of his daughter’s death, and the state of things then existing ? Not at all. Nothing is more hazardous than to take up a general expression without reference to the context, and apply it indiscriminately. In Henry & Talbird vs. Archer, Chancellor Harper is speaking of the validity of the gift over in reference to the previous gift, but he never meant to say, that because the contingent limitation over is void for uncertainty or illegality, the previous estate, well given, is thereby defeated. All the authorities maintain a contrary doctrine. “ A gift over,” says Lord Langdale in Blease vs. Burgh, 2 Beav. 221, “ which is too remote and void, cannot defeat a vested interest previously given.” Does it make any difference that the gift over is void for uncertainty or illegality, and not for remoteness ?— The rule is recognized and the authority cited by Mr. Williams in his treatise on Executors, p. 1089. It is also recognized in the case of Dougherty vs. Dougherty, 2 Strob. Eq. 67. In the case before us there is a direct bequest to the daughter and the heirs of her body. The inquiry, says Mr. Justice Cheves, in Guery vs. *389 Vernon, (1 N. & McC. 71,) is “ whether these words, issue, heirs of the body, &c., express an indefinite succession of persons, or whether they point out certain particular persons who may exist, and must take within a period not excluded by the rules of law?” To determine this inquiry the Court is permitted to look to other expressions in the context, and if it be thence ascertained that the terms are used in a restrictive sense, then the heirs of the body are held to take as purchasers. Such expressions as ‘ dying without leaving issue alive at the death of the first taker,’ have received judicial -interpretation as so restricting the testator’s meaning. And the acknowledged intention of the testator, thus violating no rule of law, is permitted to take effect, and the gift to the children is sustained under the description of heirs of the body. But the certainty or uncertainty of the objects described in the contingent limitation over, sheds no light upon the only material inquiry, and affords no aid to the Court in solving it. If the bequest were to A. and the issue of her body, but if she should die without leaving issue of her body alive at her death, then and in that event to the wisest man in England, or the man in the moon, or to the testator’s faithful slave Adam, (void under A. A. 1841,) are the issue living at the death to be defeated, because, if they did not exist, the contingent limitation would have proved illusory or impracticable ? If the bequest had been directly to the daughter for life, and afterwards to her issue living at the time of her death, with a contingent limitation in default of such issue, would it be contended that children, living at the death, had any interest in the inquiry as to this contingent limitation ? But the Court so construe thetbequest n'ow under consideration ; and yet the issue of the daughter living at* her death are held not entitled, because it is impracticable for the Court to determine who would have taken if no such issue had existed. I think the rights of the children depend on no such inquiry, but that they are entitled t<5 the personalty as purchasers under their grandfather’s will.

Appeal dismissed.